(164 App. Div. 642)

KEITH v. PAYNE. (No. 253/97.)

(Supreme Court, Appellate Division, Third Department. November 25, 1914.)

1. ELECTRICITY (§ 16*)—LIABILITY FOR INJURIES—LICENSEES.
    The leaving of a wire, charged with a strong current of electricity, suspended in such a way that it was only four or five feet from the ground, where it crossed a vacant lot, was such gross negligence as to render the company liable for injuries thereby occasioned, even to a mere licensee.
    [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

2. ELECTRICITY (§ 19*)—ACTIONS FOR INJURIES—EVIDENCE—CONTRIBUTORY NEGLIGENCE.
    In an action for injuries received by plaintiff while inspecting an electric wire, left suspended a short distance above a vacant lot adjoining his home, to see whether it was insulated so as not to be dangerous to his children, and who came in contact with the wire in an unknown manner, evidence held not to show contributory negligence as a matter of law.
    [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

    Kellogg and Howard, JJ., dissenting.

Appeal from Trial Term, Essex County.

Action by Erwin A. Keith against Daniel F. Payne. From a judgment dismissing the complaint upon a jury trial, plaintiff appeals. Reversed, and new trial granted.

See, also, 158 App. Div. 909, 143 N. Y. Supp. 1124.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Frederick E. Bowen, of Troy (Owen D. Connolly, of Troy, and H. P. Humphrey, of Troy, on the brief), for appellant.

Stokes & Owen, of Port Henry (Harry E. Owen, of Port Henry, of counsel), for respondent.

SMITH, P. J. The defendant operated an electric lighting plant at Wadhams. The current was carried from Westport by means of wires. At Westport the plaintiff rented a house and lot of Mr. Sullivan, back of which was an open field owned by Sullivan, over which

the defendant had a right of way one rod wide for its wires and access thereto.

On June 15, 1912, the defendant's servants were at work upon the line, moving the transformer house, and at 6 o'clock, when they were ready to quit work for the day, the wire was suspended from an arm on the transformer house to a pole in its right of way, about 154 feet distant, and sagged so that at its lowest point it was within 4 or 5 feet of the ground. The wire was used for day and night service, and frequently the plaintiff's little children went beyond the yard and garden spot upon the other premises of Sullivan in the neighborhood of the electric wires. When the plaintiff returned from his work, his wife informed him that the wires were lower than usual, and to go there and see if they were insulated, because she was afraid the children would get hold of them. He went to the wires for that purpose about 7:30 or 8 p. m., and when about 10 feet from the wires saw them. It was growing dark. He says: "It was quite light, and still it was not full light." He leaned down to go under them, and that was the last he knew until he found himself upon the ground, with one hand against the wire, one leg up, and in his hand, and he was severely burned in several places. He had lived in the house for three months, and in the immediate vicinity a longer time. He understood the line carried the power from Westport to Wadhams, and supposed that electricity coming over the wire was dangerous. He was asked:

"There was danger to be apprehended to a person coming in contact with this electric wire? A. Yes, sir. Q. And that is the reason why you stooped, I suppose, to get under that first wire, wasn't it? You didn't want to come in contact with those wires; did you? A. No, sir."

He says he did not know the power was furnished over the wires during the daytime as well as the night. He says lights were lit in the agent's office in the morning and early in the evening. He does not say that he understood or believed that power was not upon the wires.

He was about 30 years of age, 6 feet 2½ inches high, and was baggageman at the railroad station in the immediate vicinity. After the accident he found a small spot on the wire not insulated, near where his hand was. He swore on direct examination that he noticed a wire coiled up on the transformer house, and said it was before the accident. On cross-examination the court asked the question:

"You said something about having seen a coil of wire some place that night. Where did you see that? A. On the transformer house. Q. A coil hanging there? A. Yes, sir. Q. Was that the transformer house, after it had been moved? A. Yes, sir. Q. And you saw that when? A. After I got hurt. Q. You had not seen it before? A. No, sir."

[1] It was not unreasonable that persons might pass across the unfenced lands of Mr. Sullivan and go under the wires of the company, and when it left its wires conveying a deadly current within 4 or 5 feet of the ground upon those unfenced premises, without any warning, it was an act of gross negligence.

Even assuming that plaintiff was a mere licensee, the danger was so

great that the jury might have said that the negligence was sufficient to charge the defendant therewith.

[2] Nor do I think the plaintiff was guilty of contributory negligence as matter of law. He was asked by his wife to examine to see whether the wires were insulated, for the purpose of ascertaining whether there was danger to the children in playing thereabout. Confessedly the wires were insulated, except that at one small point the insulation was worn off. It is a fact that that insulation was wholly insufficient to protect any one coming in contact with wires carrying so strong a current; but it does not appear that the plaintiff had knowledge that the insulation was insufficient. He swears that he did not purposely touch the wires, but attempted to go under them, and does not remember how he came to come in contact with them. With the apparent insulation, even if he had taken hold of the wire to lift it, that he might go under, it would still be a question of fact whether he had not the right to assume that his act was safe; but without evidence that he purposely took hold of the wire, it seems clear that it is for the jury to say whether, under all the circumstances of the case, the plaintiff acted with the care of an ordinarily prudent person.

For these reasons, we are of opinion that the judgment of nonsuit was wrong, and that the case should have been submitted to the jury.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur, except KELLOGG and HOWARD, JJ., who dissent.