, Hamilton Ward, J.
Special Term, Erie County, is to decide whether the plaintiff has alleged facts sufficient to constitute a cause -of action (CPLB, 3211, subd. [a], par. 7).
In summary, the complaint alleges that the defendants negligently removed all of the kidney tissue of one Carl Sirianni during the course of a surgical procedure conducted by and participated in by these defendants as physicians and surgeons ; and further, that such negligent conduct on the part of these defendants gives to this plaintiff a cause of action.
'Carl Sirianni is the adult, emancipated, natural son of the plaintiff.
It is medically certain that Carl Sirianni could not long live without human kidney tissue. For several weeks his life was preserved by the use of a mechanical device designed as a substitute for natural kidneys. This was a temporary measure. He began to fail and death seemed certain. A human kidney transplant was needed if Carl Sirianni was to live. After tests and examinations of several persons, it was medically determined that the plaintiff possessed healthy, compatible kidneys, and that with reasonable medical certainty, if a transplant succeeded, Carl Sirianni would live. The plaintiff volunteered to surrender one of her kidneys. The surgical procedure performed by other doctors was successful. Carl Sirianni lives, now nearly four years -since the implantation of the kidney of the plaintiff. Carl Sirianni made a claim against these defendants for medical malpractice. ' That claim was settled and released for a very substantial sum prior to the commencement of this action.
By this complaint, plaintiff alleges her health has been impaired by the loss of one of her kidneys, and seeks damages therefor against these defendants on the theory that their negligent conduct in removing the kidneys of her son, Carl Sirianni, is now available to her in order to maintain this action and constitutes a cause of action on her behalf.
Stripped of emotionalism, the issue here is, does a cause of action exist in favor of a donor of a human organ against defend *555 ants who removed vital human organs from the donee in a negligent manner?
No such theory of suit as alleged in plaintiff’s complaint has ever before, it seems, been put forward in any court anywhere. Chief Judge Desmond, writing in a first-impression suit, held: ‘ ‘ That no such claim has ever before been accepted by a court is not in itself an unscalable barrier. ” (Williams v. State of New York, 18 N Y 2d 481, 483.) In that ease there was also presented the difficulty of measuring damages. Chief Judge Desmond continued (p. 484): “Impossibility of entertaining this suit comes not so much from difficulty in measuring the alleged 1 damages ’ as from the absence from our legal concepts of any such idea as a ‘ wrong ’ ” (emphasis supplied).
The problem here is, does the admitted “wrong” of these defendants as to Carl Sirianni carry over and constitute a “ wrong ” as to this plaintiff within our legal concepts?
Further, in the Williams case, Chief Judge Desmond wrote (p. 483):
‘ ‘ As claimant reminds us, our own court has in the last 15 years permitted suits to lie for wrongs which earlier decisions had found not suable — for instance, Woods v. Lancet (303 N. Y. 349); Bing v. Thunig (2 N Y 2d 656); Ferrara v. Galluchio (5 N Y 2d 16); Battalla v. State of New York (10 N Y 2d 237); Greenberg v. Lorenz (9 N Y 2d 195); Goldberg v. Kollsman (12 N Y 2d 432). But in none of these did we declare that to be an actionable wrong which the law had found before to be no wrong at all — in other words, we did not in the instances cited create new causes of action. In each of those cases we decided that an earlier court-created immunity or exemption should no longer be provided. In Woods v. Lancet (supra) we, reversing our own earlier precedents, made it possible for an infant after birth to recover for injuries sustained en ventre. In Bing v. Thunig (supra) we removed an ancient court-devised immunity of charitable hospitals. Battalla v. State of New York (supra) held (and similarly Ferrara v. Galluchio, supra) that a psychic trauma negligently caused is as much a basis for damages as is a physical hurt. The Goldberg and Greenberg (supra) holdings brought into liability the makers as well as the purveyors of damage-causing products. In none of these were we asked to, nor did we, go so far as to invent a brand new ground for suit. ” (Emphasis supplied.)
It seems to this Special Term that it is called upon by this complaint to invent a “ brand new cause of action” presently outside our legal concepts of suable tortious conduct.
*556 For this reason, although Special Term has fully examined, it has set aside the classical tests of foreseeability and proximate cause, as it holds that the negligence of these defendants came to rest on the body of Carl Sirianni. The premeditated, knowledgeable and purposeful act of this plaintiff in donating one of her kidneys to preserve the life of her son did not extend or reactivate the consummated negligence of these defendants. The conduct of the plaintiff herein is a clearly defined, independent, intervening act with full knowledge of the consequences.
Special Term has also carefully and fully examined the ‘ ‘ rescue doctrine ” as set forth in such landmark cases as Eckert v. Long Is. R. R. Co. (43 N. Y. 502 [1871]); Gibney v. State of New York (137 N. Y. 1); and Wagner v. International Ry. Co. (232 N. Y. 176 [1921] and the cases cited therein in the brief of Hamilton Ward, the plaintiff Wagner’s attorney). In each of these cases, the rescuer acted without knowing his fate. Here, with full knowledge of the consequences of her voluntary action, this plaintiff mercifully surrendered up one of her kidneys and preserved the life of her son. Judge Cardozo, as part of the magnificent language, a trade-mark of his writings, wrote (p. 180): “ The risk of rescue, if only it be not wanton, is born of the occasion. ” (Emphasis supplied.) It seems to this court that Judge Cardozo used the word “ wanton ” synonymously with the word “ willful ”, and not in the oft-used sense of reckless disregard. (See Ballentine, Law Dictionary with Pronunciation [2d ed.].) “ The word ordinarily means intentional, as distinguished from accidental or involuntary ”. Thus, it appears that Judge Cardozo excluded from the rescue doctrine a “ wanton ” (willful) act on the part of the rescuer. The act of the plaintiff here is willful, intentional, voluntary, free from accident and with full knowledge of its consequence.
Further, in the rescue cases, the rescuer launches to the rescue, unmindful of and without knowing his fate. “ Danger invites rescue. The cry of distress is the summons to relief. ” (p. 180). “ The emergency begets the man. ” (p. 180). The rescuer may have considered the nature of his act without contemplating its consequence. This is not the case here. However merciful and natural the act of this mother in preserving the life of her son, Special Term holds that under the circumstances of this case, “ the rescue doctrine ” has no application.
The miracle of modern medicine seems now on the threshold of successfully transferring many organs from one human body to another. The issue raised here may in the future frequently find its way into the courts. This issue should be settled. If public policy requires that a donor is permitted to maintain a *557 cause of action under the circumstances here, such cause of action must be created, not by judicial fiat, but by legislation, as was the case when the Legislature of this State created the cause of action for wrongful death (L. 1847, ch. 450, and as subsequently amd.)
These motions are granted.