■ RAYMOND R. LAFFERTY, as Administrator of the Estate of ANNA E. LAFFERTY, Deceased, et al., Respondents, v MANHASSET MEDICAL CENTER HOSPITAL et al., Appellants. — In a medical malpractice action, defendants appeal from an order of the Supreme Court, Nassau County, dated February 23, 1980, which denied their motion, pursuant to CPLR 3211 (subd [a], par 7), to dismiss the third and fourth causes of action of the amended complaint. Order reversed, on the law, without costs or disbursements, motion granted and plaintiffs' third and fourth causes of action are dismissed. According to the amended complaint, on or about October 16, 1976, Anna E. Lafferty, while a patient at the defendant Manhasset Medical Center Hospital (the hospital), received a transfusion of a type of blood foreign to and incompatible with her blood type, because of the negligence of defendants. As a proximate result, it is alleged she suffered injury, shock and pain and thereafter died on or about July 24, 1977. In this action plaintiffs Raymond R. Lafferty, the son of Anna E. Lafferty, and Helen M. Lafferty, her daughter-in-law, assert four causes of action against defendants. The first two causes of action, sounding in medical malpractice and wrongful death, are asserted solely on behalf of plaintiff Raymond R. Lafferty in his capacity as administrator of the goods, chattels and credits of Anna E. Lafferty, and are not at issue on this appeal. The third and fourth causes of action are asserted solely on behalf of plaintiff Helen M. Lafferty (hereafter plaintiff). By these causes of action, read in the context of her testimony at her examination before trial, plaintiff seeks, in essence, to recover for emotional distress and the aggravation of a pre-existing heart problem which she allegedly suffered as a result of her having been a witness to the negligent blood transfusion and a participant in the events that occurred in the 45- to 60-minute period immediately following the start of the transfusion. After joinder of issue, defendants moved to dismiss the third and fourth causes of action on the ground that they failed to state a cause of action (see CPLR 3211, subd [a], par 7). Upon the pleadings, affirmations of counsel and excerpts of plaintiff's examination before trial submitted by plaintiffs (see CPLR 3211, subd [c]), Special Term denied defendants' motion to dismiss these causes of action. It relied in part on *Johnson v State of New York* (37 NY2d 378) and *Matter of Wolfe v Sibley, Lindsay & Curr Co.* (36 NY2d 505), read in the light of cases such as *Dillon v Legg* (68 Cal 2d 728). Distinguishing the case of *Tobin v Grossman* (24 NY2d 609) as involving a "mere witness" to an occurrence caused by a defendant's negligence, Special Term was of the view

that "the Court of Appeals may be ready to allow recovery to a bystander in a case such as the one at bar", particularly since "[plaintiff's] presence and active participation were actually known to the hospital". While we agree with Special Term that the facts alleged in this case differ from those alleged in *Tobin* in some respects, we are not convinced that New York law, as expressed in *Tobin v Grossman (supra)* and subsequent cases in the Court of Appeals, permits recovery under the third or fourth causes of action alleged at bar. The record reveals that while plaintiff, who was not a patient at the hospital, was visiting her 88-year-old mother-in-law, Anna Lafferty, in the latter's hospital room, one or more of the defendants, in plaintiff's presence, began to administer a blood transfusion to plaintiff's mother-in-law. After inserting a needle and "adjusting the drip", the defendants left plaintiff alone with her mother-in-law and the other patients sharing the hospital room. After several minutes, Mrs. Lafferty began to evidence signs of distress, and stated, *inter alia*, that she felt "very sick" and "need[ed] the bedpan very badly". Plaintiff left the room and summoned a nurse, with whom she returned to the room. While her mother-in-law was complaining of pain and was "gagging", plaintiff and the nurse removed a "vomit tray" from a cabinet and plaintiff held the tray for her mother-in-law. The nurse observed what was happening and left the room. Several minutes later a nurse and defendant Dr. Kiran Shah, who had apparently been involved in starting the transfusion, entered the room. Shah took measures to aid Mrs. Lafferty, including stopping the transfusion, withdrawing the needle from her arm, ordering an injection of Benadryl, taking her blood pressure and pulse, and asking her whether the pain was diminishing. After about 10 or 15 minutes from the time the transfusion apparatus was removed, plaintiff's mother-in-law quieted down. "Eventually" Dr. Shah left the room, leaving plaintiff alone with her mother-in-law and the other patients in the room. Before he left, Shah asked plaintiff if she was going to remain in the room. When plaintiff replied that she was, Shah "instructed" plaintiff that if she observed "any change of any kind" she should "be sure to notify the nurses immediately". Several minutes later, Mrs. Lafferty started to "tremble slightly" and to complain that she felt "very cold". Plaintiff left the room and notified a nurse who, in response, placed an "extra" blanket over plaintiff's mother-in-law and left the room. Several minutes later, Mrs. Lafferty began to "shake violently" and complain about severe pain. Plaintiff rang for a nurse. Two nurses responded and each took Mrs. Lafferty's blood pressure. On each occasion, "the mercury shot to the top". After plaintiff asked them to call a Dr. Stein, both nurses left the room. Then, Mrs. Lafferty's fingertips, hands and face began to "turn blue". Plaintiff ran to the nursing station and asked for help. One nurse returned, took Mrs. Lafferty's blood pressure and, in response to plaintiff's question, told plaintiff that the nurses were trying to contact Dr. Stein. That nurse then left the room. A few minutes later, the nurses returned and asked plaintiff to speak to Dr. Stein on the telephone. At some later time the nurses, accompanied by plaintiff, took plaintiff's mother-in-law, who was on a stretcher, and wearing a portable oxygen mask, to the intensive care unit. At that point, plaintiff's involvement in this episode apparently ceased. In *Tobin v Grossman* (24 NY2d 609, *supra)*, the Court of Appeals, declining to follow cases such as *Dillon v Legg* (68 Cal 2d 728, *supra)*, held that a mother could not recover against a tort-feasor for her own mental and physical injuries caused by shock and fear for her two-year-old child who suffered serious injuries in an automobile accident. Although the complaint and the mother's examination before trial were at variance with respect to whether the mother had actually seen the accident, the Court of Appeals (p 611) "concluded that under the well-established applicable doctrines, no cause of action lies for

unintended harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries". In terms of traditional tort concepts, the court in reaching this conclusion, declined to extend the concept of duty "to third persons, who do not sustain any physical impact in the accident or fear for their own safety" (p 613). The court did so, not because there was any doubt that the serious injury of a child of tender years has an impact on the child's mother (p 615), or because the harm to the mother was not foreseeable, but primarily because "Assuming that there are cogent reasons for extending liability in favor of victims of shock resulting from injury to others, there appears to be no rational way to limit the scope of liability" (p 618). After rejecting as ways of rationally limiting liability limits based on whether the plaintiff was an eyewitness to the occurrence which resulted in direct injury to another, the age of the person directly injured, or the relationship between the plaintiff and that person (pp 618-619), some of which limits formed the crux of the decision in *Dillon v Legg (supra),* the Court of Appeals concluded, "It is enough that the law establishes liability in favor of those directly or intentionally harmed" (p 619). Since plaintiff was not subjected to physical impact or rendered fearful for her own safety as a result of the allegedly negligent transfusion of blood into her mother-in-law or the events that transpired afterward, the principles of *Tobin v Grossman (supra)* appear to bar her claim. Nor does it appear that these principles have been sufficiently eroded by subsequent cases to permit plaintiff to recover under the present state of the law. In *Matter of Wolfe v Sibley, Lindsay & Curr Co.* (36 NY2d 505, *supra),* it was held that the claimant, a secretary to a Mr. Gorman, the security director of a department store, had suffered an accidental injury arising out of and in the course of employment within the meaning of the Workers' Compensation Law where she suffered psychological injury upon discovering her superior's body after he committed suicide in his office. Shortly before his death, Mr. Gorman had asked the claimant to call the police to his office. Apart from the very significant circumstance that (p 508) "Workmen's compensation, as distinguished from tort liability which is essentially based on fault, is designed to shift the risk of loss of earnings capacity caused by industrial accidents from the worker to industry and ultimately the consumer", the Court of Appeals (p 511) relied on the fact that the claimant was an "active participant" and not a "third party merely witnessing injury to another", in reaching its conclusion. The court explained the claimant's status as an "active participant" (p 511): "Mr. Gorman's nervous condition had intensely involved her, to the point of her being required to assume his responsibilities and attempting to comfort him. Not only did she consider his suicide a personal failure but she was an integral part of the tragedy by virtue of his last communication and her discovery of his lifeless body. The feeling on her part that she should have been able to foresee and to prevent the tragedy was undoubtedly a competent producing cause of her incapacitation." However, *Matter of Wolfe v Sibley, Lindsay & Curr Co. (supra)* does not warrant recognition of the causes of action asserted by plaintiff in this action. As already suggested, "There recovery was allowed solely on the elastic basis permitted by the Workmen's Compensation Law as applied in the courts" *(Johnson v State of New York,* 37 NY2d 378, 383, *supra).* Thus, it does not necessarily follow that application of the concept of "active participation" to determine whether a workers' compensation claimant received an accidental injury arising out of and in the course of employment so as to give rise to compensation regardless of fault portends that such a concept may be properly applied in the area of tort liability involved in this case. Moreover, *Matter of*

*Wolfe* is factually distinguishable in that there the claimant considered her superior's suicide to be a "personal failure" because it occurred notwithstanding her efforts to assume his employment responsibilities, comfort him and, perhaps, effect the timely arrival of the police. At bar, plaintiff's "participation" occurred only after the event that directly caused her mother-in-law's injuries, the negligent transfusion of mismatched blood, had occurred and was an attempt to ameliorate the consequences of that event rather than to prevent that event from occurring in the first place. Also distinguishable is *Johnson v State of New York* (37 NY2d 378, *supra),* since, in that case, the defendant hospital, in negligently misinforming the claimant that her mother had died, directly inflicted emotional injury upon the claimant as a result of its breach of duty owed directly to the claimant. Since the claimant was directly harmed by breach of a duty owed directly to her (p 383), "the rationale underlying the *Tobin* case, namely, the real dangers of extending recovery for harm to other than those directly involved" was inapplicable. At bar, plaintiff contends that a duty, the breach of which gives rise to liability was owed directly to her by defendants because "Her presence was actually known to the defendants and she was in the reasonably foreseeable zone of danger and the risk of psychic injury was manifest". Plaintiff adds "Whatever doubt as to whether she was owed a duty was actually resolved after she was asked to assist in attending the patient". With respect to the former assertion, we note that foreseeability alone does not give rise to a duty (see *Pulka v Edelman,* 40 NY2d 781, 785-786). Thus, it was recognized in *Tobin v Grossman* (24 NY2d 609, 615, *supra)* that the mere fact that emotional harm to the mother of a young child injured in an accident is foreseeable, since the mother is "likely to be present or about", does not provide a sufficient basis to render the tort-feasor liable to the mother, a prerequisite of which would be the recognition that there was a duty owed to the mother by the tort-feasor. With respect to the latter assertion, plaintiff does not specify the duty to her that the defendants undertook by their having allegedly asked her to assist in attending her mother-in-law or how this duty was breached with resultant injury to her. As already indicated, to the extent that defendants' asking plaintiff to assist in attending her mother-in-law merely enhanced the foreseeability of plaintiff's being emotionally injured by their negligent acts with respect to her mother-in-law, this act is not sufficient to establish a duty, the breach of which will give rise to liability. Nor does any articulable and legally cognizable duty to the plaintiff appear to otherwise arise from the acts of plaintiff and defendants during or following the allegedly negligent blood transfusion. Certainly the duty which plaintiff seeks to attribute to defendants is less well defined than the duty attributed to the defendant hospital in *Johnson v State of New York* (37 NY2d 378, 382, *supra)* which duty was akin to that recognized in "the telegraph cases and the corpse mishandling cases". In our view, rather than resembling that of the daughter in *Johnson,* the position of plaintiff in this case seems to be more akin to that of the parents in *Howard v Lecher* (42 NY2d 109) who, allegedly because of the defendant doctor's failure to advise them before the birth of their child that there was a high risk that the child would be born afflicted with Tay-Sachs disease, were made to bear the anguish of observing their daughter, after her birth, suffer the inevitable degeneration and death that results from that disease. Certainly it was foreseeable that those parents would be compelled to observe and attend to their afflicted child, but they were denied an opportunity for recovery for much the same reason that such an opportunity was denied in *Tobin v Grossman* (24 NY2d 609, *supra)* (see *Howard v Lecher, supra,* pp 112-113; see, also, *Becker v Schwartz,* 46 NY2d 401, 413-415; cf. *Vaccaro v Squibb Corp.,* 52 NY2d 809). In her fourth cause of action, plaintiff seeks to remedy

the apparent absence of an otherwise articulable duty owed to her by defendants by reliance on a "danger invites rescue" theory (see *Wagner v International Ry. Co.,* 232 NY 176), the validity of which was not determined by Special Term. However, to the extent that this doctrine, in and of itself, creates a duty, rather than merely affording a basis for a plaintiff not being held contributorily negligent as a matter of law (see *Provenzo v Sam,* 23 NY2d 256, 260), and may be recognized in this context notwithstanding *Tobin v Grossman (supra)* and subsequent cases, it does not appear to operate to create a duty here. This is so since plaintiff did nothing to prevent her mother-in-law from receiving the improper blood transfusion or to prevent the mismatched blood from physically harming her mother-in-law, matters which were to be handled by the attending medical personnel. By her actions plaintiff merely lent some assistance to those who were primarily responsible for ameliorating the consequences of the improper blood transfusion, a danger which had already affected plaintiff's mother-in-law and from which she could not have been rescued by plaintiff. In this regard, we note that most of plaintiff's actions occurred after the blood transfusion had been halted by Dr. Shah. In sum, it appears that New York law does not presently permit recovery for emotional distress and resultant physical harm unless such distress has been the proximate result of the breach of a duty owed directly to the plaintiff by the alleged tort-feasor. As reflected in *Tobin v Grossman (supra)* and subsequent cases where these elements have been lacking, our highest court has rejected attempts to allow a recovery, even within limits, such as those based on the plaintiff having been an eyewitness to the crucial events or a close relation to the person who was more directly harmed by the tort-feasor's negligence, since such limits would not be rational. In light of this case law, since plaintiff's "participation" does not appear, in and of itself, to have given rise to any duty owed directly to her by defendants, and does not otherwise legally distinguish this case from cases where similar causes of action have not been recognized, we conclude that such participation does not warrant departure from the general rule that "no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another" *(Tobin v Grossman, supra,* p 611). Damiani, J. P., Cohalan, Margett and Weinstein, JJ., concur. [103 Misc 2d 98.]