MARVIN F. MOORE et al., Appellants, v MAHENDRA J. SHAH, Respondent.

Third Department, December 30, 1982

APPEARANCES OF COUNSEL

*Ziff, Weiermiller, Learned & Hayden* (*Scott J. Learned* of counsel), for appellants.

*Davidson & O'Mara, P. C.* (*Kevin M. O'Shea* of counsel), for respondent.

OPINION OF THE COURT

WEISS, J.

In what appears to be a case of first impression for an appellate court, we are called upon today to determine whether the donor for a kidney transplant has a cause of action against a physician who was allegedly guilty of negligence in the diagnosis and prescribed treatment of his patient, the donee, in this case the donor's father. The complaint alleges that the negligent diagnosis and treatment caused the father's kidney failure, necessitating later transplantation. Plaintiffs would have this court extend the well-defined principles of the rescue doctrine to one whose decision to come to the aid of his father was deliberate and reflective, not made under the pressures and exigencies of an emergency situation, and significantly, at a time after defendant's alleged negligent acts. For the reasons stated, we decline to do so and affirm the order at

Special Term which granted defendant's motion to dismiss the third cause of action asserted in the complaint by plaintiff Marvin Richard Moore.

The predicate for holding a defendant liable must be that a duty is owed the plaintiff, the breach of which duty is the proximate cause of plaintiff's injury (*Palsgraf v Long Is. R.R. Co.,* 248 NY 339). In order to establish the existence of such duty, a defendant must foresee that his negligence could cause injury, in this case not only to his patient, but to the patient's son as well. While questions concerning what is foreseeable are generally issues for resolution by the finder of fact, there are certain instances where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law (*Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315). Plaintiff contends, however, that the rescue doctrine serves to establish the requisite foreseeability between the doctor's negligence in treatment of his father and injury to himself as the rescuer (see Prosser, Torts [4th ed], § 44, p 277; see, also, *Gibney v State of New York,* 137 NY 1, 6; *Eckert v Long Is. R.R. Co.,* 43 NY 502), arguing that defendant knew or should have known plaintiff would logically be the first person to donate a kidney to his father. It is true that a wrong perpetrated upon a victim is also a wrong to his rescuer (*Wagner v International Ry. Co.,* 232 NY 176, 180), and that so long as the rescue is not a rash or wanton act, the rescue doctrine extends a defendant's liability to the rescuer (*Provenzo v Sam,* 23 NY2d 256; *Wagner v International Ry. Co.,* 232 NY 176, 180-181, *supra; Lafferty v Manhasset Med. Center Hosp.,* 79 AD2d 996, 1000, affd 54 NY2d 277). While plaintiff did not act compulsively or instinctively under pressures of emergency requiring the immediate action usually attendant rescues, there are authorities which have applied the doctrine in other than spontaneous reaction situations (see *Guarino v Mine Safety Appliance Co.,* 25 NY2d 460; *Rucker v Andress,* 38 AD2d 684; *Keith v Payne,* 164 App Div 642). However, we find that foreseeability alone is not enough to impose liability. Since plaintiff was never defendant's patient, no duty to him originally existed. Therefore, we are here involved with a question of whether foreseeability

should be employed as the sole means to create a duty where none existed before (see 2 Harper and James, Torts, § 18.2, particularly p 1027; see, generally, §§ 18.3-18.5). It is obvious that extension of liability of a physician to every person who conceivably might come forward as a kidney donor could create a group beyond manageable limits. Then Associate Judge COOKE, writing for the Court of Appeals in *Pulka v Edelman* (40 NY2d 781, 786) said: "If a rule of law were established so that liability would be imposed in an instance such as this, it is difficult to conceive of the bounds to which liability logically would flow. The liability potential would be all but limitless and the outside boundaries of that liability, both in respect to space and the extent of care to be exercised, particularly in the absence of control, would be difficult of definition."

We agree. In order to recover, a plaintiff must be one within the "zone of danger" (*Tobin v Grossman,* 24 NY2d 609, 616; *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, *supra*). It is difficult to charge a physician with the responsibility to foresee each and every person other than his patient who might conceivably be affected by his negligence. "A duty arises when the relationship between individuals, the asserted plaintiff and defendant, is such as to impose upon the latter a legal obligation for the benefit of the former * * * 'While a court might impose a legal duty where none existed before * * * such an imposition must be exercised with extreme care' * * * In the absence of duty, there is no breach and therefore no liability" (*DeAngelis v Lutheran Med. Center,* 84 AD2d 17, 22).

Our research has disclosed but one reported case in which the plaintiff was an actual organ donor. In *Sirianni v Anna* (55 Misc 2d 553), where a similar factual pattern to the instant case existed, Special Term granted defendant's motion to dismiss the complaint. While this court is not bound by *stare decisis* to follow that decision, we are persuaded by subsequent cases that it was correct. Only one year ago, the Court of Appeals held that where there is no allegation that the defendant was negligent with respect to the plaintiff as opposed to the patient, the case does not fall within recognized limits to the rescue doctrine and it declined to extend existing principles of law so as to

expand the liability of a negligent actor to include third parties who suffer (shock) as a result of direct injury to others (*Lafferty v Manhasset Med. Center Hosp.,* 54 NY2d 277, 279, citing *Tobin v Grossman,* 24 NY2d 609, *supra; Vaccaro v Squibb Corp.,* 52 NY2d 809; *Becker v Schwartz,* 46 NY2d 401; *Howard v Lecher,* 42 NY2d 109). We agree with the opinion of the Appellate Division, Second Department, "that courts should not shirk their duty to overturn unsound precedent and should strive to continually develop the common law in accordance with our changing society * * * Yet, the mere potential ability to change the common law is not the same as the desirability of making a particular change" (*DeAngelis v Lutheran Med. Center,* 84 AD2d 17, 24, *supra*). There are serious policy considerations which militate against the recovery sought here. Our decision may best be summarized in the words of then Associate Judge BREITEL in *Tobin v Grossman* (24 NY2d 609, 619, *supra*): "Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree". We decline here to extend the common law to create a remedy for these plaintiffs.

The order and judgment should be affirmed, without costs.

MAHONEY, P. J., KANE, CASEY and MIKOLL, JJ., concur.

Order and judgment affirmed, without costs.