**Hiles v. Steinbrink**

*Leonard E. Price,* for plaintiffs.

*Irving O. Murphy* and *Craig R.F. Murphey,* for defendant William Steinbrink, M.D., and Steinbrink, Finn and Associates Inc.

*T. Warren Jones,* for defendant Hamot Medical Center.

BOZZA, *A.J.,* February 8, 1991 — This is a medical malpractice action brought on behalf of Michael Hiles, a minor, and his parents, Warren E. Hiles and Debra M. Hiles, against defendant Wil-

liam Steinbrink, M.D., an obstetrician and gynecologist, and additional corporate parties. Defendants have filed preliminary objections which inter alia include a demurrer to Warren E. Hiles' claim for the voluntary relinquishment of one of his kidneys to be transplanted in his son, Michael.

Plaintiffs allege that Dr. Steinbrink negligently treated Debra Hiles during her pregnancy by failing to properly monitor the development of her fetus, by not employing or improperly employing sonograms. On December 16, 1987, Michael Hiles was delivered with complications to both kidneys caused by urinary obstruction. Subsequent surgery was unsuccessful and Michael was left with only one partially functioning kidney. The treatment alternatives were limited to either continual dialysis or a kidney transplant operation. The transplant alternative was investigated and it was determined that Warren Hiles was a compatible potential donor of a kidney. On November 27, 1990, Warren Hiles' left kidney was transplanted into his son, Michael.[1]

Defendants argue that they cannot be held legally responsible for Warren Hiles' damages because at the time of Dr. Steinbrink's allegedly negligent conduct, he could not have foreseen that Mr. Hiles would suffer personal injuries as a result of that conduct; therefore, he did not owe to Mr. Hiles a legal duty to exercise due care. Defendants further contend they are not legally responsible for the loss of Mr. Hiles' kidney because the loss of the kidney was essentially too remote an occurrence and therefore Dr. Steinbrink's conduct was not the proximate cause of Mr. Hiles' loss.

---

1. Although occurrence of the compatibility testing and transplantation were not pled, it was agreed by the parties during argument that the court would be notified if and when these things occurred. Plaintiffs' attorney has done so and no further pleading in that regard is required.

Initially, this court notes that the appellate courts of the Commonwealth have not previously addressed these issues. Indeed, it appears that only New York State has dealt directly with the subject matter at hand, rejecting the claim of an organ donor. *Moore v. Shah,* 458 N.Y.S.2d 33 (A.D. 1982).

Perhaps this case demonstrates in an unusually apparent manner the inherent weakness of the common-law approach to determining the extent of liability for conduct falling below the minimum standard of care. In the absence of a direct relationship between a physician and a person ultimately claiming injury, a determination of the foreseeability of the injury is required. *Zanine v. Gallagher,* 345 Pa. Super. 119, 497 A.2d 1332 (1985). While a traditional tort analysis includes foreseeability as an aspect of both a "duty" analysis and a "proximate cause" analysis, the position delineated in the Second Restatement of Torts has had the effect of significantly limiting the role of foreseeability in the context of the latter and emphasizing it in the former. See generally, Restatement (Second) of Torts §§430, 435 (1965); *Little v. York County Earned Income Tax Bureau,* 333 Pa. Super. 8, 481 A.2d 1194 (1984). Unfortunately, the use of a term such as "foreseeability" within the context of what is usually described as an objective test of negligence presents a paradox. Notwithstanding one's interest in what a "reasonable person" would do or know, the notion of foreseeability requires at best a speculative determination of the future consequences of present behavior. Indeed, it is unclear whether the inquiry is an assessment of probability or possibility. See Restatement (Second) of Torts §281, comment d. Unless one is strictly applying the laws of science, a foreseeability determination is largely a matter of individual supposition. The le-

gally infamous decision of the New York Court of Appeals in *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928), provides a good example of the difficulty. Most noteworthy because of the court's use of the foreseeability standard to determine the existence of a "legal duty" the actual result of the court's analysis has apparently warranted little interest. Specifically, the court concluded that a person who carries fireworks onto a train would not foresee someone getting hurt by a falling object set in motion by the force of an explosion resulting from the fireworks being dropped. Perhaps a lay person may understandably ask, "Why not?" and argue that it is entirely reasonable to assume that as a result of an explosion, people will likely get hurt by falling objects or in a myriad of other ways not easily predicted. The subjective nature of the inquiry dictates disagreement.

In the context of the case at bar an assessment of foreseeability is complicated by the necessity of determining what a physician would have reasonably foreseen about the consequences of the treatment he was providing. The relevant inquiry centers on what would be foreseeable to a reasonably competent obstetrician. To such a person would Mr. Hiles' decision to relinquish a kidney be a possible or perhaps probable consequence of the failure to properly monitor the development of a fetus? If such a question was submitted to a lay jury, it would be necessary for jurors to rely on the expertise of witnesses called to testify about the state of obstetric practice at the relevant time. The court when asked to determine whether a cause of action is stated must rely on the recitation of facts in the complaint setting forth what a reasonably competent obstetrician would have foreseen about the consequences of his carelessness. Unfortunately, in this

case no such facts are pled and the breadth of the concept of foreseeability notwithstanding, the court would be required to speculate. In the absence of allegations of fact in his complaint supporting a finding of foreseeability, Warren Hiles has failed to set forth a prima facie case on each of the elements of negligence and a demurrer must be sustained. *Feingold v. Hill,* 360 Pa. Super. 539, 521 A.2d 33 (1987).

Assuming arguendo the existence of facts supporting a finding of foreseeability, the issue of liability is by no means resolved. As the New York Supreme Court noted in *Moore v. Shah, supra,* foreseeability is not the sole criteria for determining the right to recover for personal injuries. This is exemplified in the line of cases in Pennsylvania which have limited recovery to individuals who have suffered harm by being within the "zone of danger" or, alternatively, sustained injury as a result of the direct personal observation of a negligent event. See *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Hoar v. Hamot Medical Center,* C.P. of Erie County, no. 2220 of 1989 (January 3, 1990); *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970). There must be a realistic concern for the consequences of extending liability to new circumstances or to a new class of potential plaintiffs. In *Sinn,* the Pennsylvania Supreme Court had to wrestle with this issue in deciding that a parent who observed a child being injured could recover damages for emotional distress. Certainly it was apparent to the court that as a result of a child being injured in an automobile accident, the child's parents would be upset and that the emotional pain may be most traumatic in the event the parent observes the actual infliction of the injury. It was not, however, the foreseeability of severe emotional stress per se which allowed recovery. The direct personal

observation of the negligent event was a necessary ingredient. Indeed, it may be far more painful, perhaps even debilitating, for a parent to have to care for and observe a seriously injured child suffer through a prolonged period of invasive medical treatment, recuperation, or even worse, the prospect of death. While this must also be considered a foreseeable consequence of a negligent act harming a child, liability has been imposed in this Commonwealth only in the circumstance of direct observation.

Obviously then, the question directed to the court is under what circumstances — existence of foreseeability notwithstanding — should liability be extended. It is this essentially policy determination that the court is ill-equipped to address in the circumstances presented by the facts of this case. Extending the prospect of recovery to a class of plaintiffs whose common characteristic is the voluntary relinquishment of a body part raises profound ethical, moral and practical issues. Any decision in this regard would necessarily require extensive inquiry into the present state of medical science and answers to a number of compelling questions. Should liability extend to injuries suffered by the entire class of body part donors or should it be restricted to parents and siblings or within some other degree of consanguinity? Perhaps there is a sub-class of claimants whose members, because of some unusual anatomical or perhaps genetic characteristic, are significantly more likely to be called upon as a donor. Should the circumstances surrounding an ostensibly voluntary decision to relinquish an organ or body part be a consideration? Is the degree to which the transplant is medically necessary a factor? While the existence of these unresolved questions should not necessarily preclude recovery, they indicate a need for a decision-

making forum which would provide the opportunity for a more thorough and in-depth inquiry, not available in the normal course of civil litigation. In this circumstance, and recognizing the current state of the law does not encompass a cause of action for damages associated with the voluntary relinquishment of a body part for purposes of transplantation, it must be concluded that plaintiffs have failed to state a claim upon which relief may be granted.[2]

Finally, defendants have requested that plaintiffs' assertion that they were "otherwise being negligent under the circumstances. . ." be struck. While this court does not believe that such an averment in any way expands plaintiffs' right to amend their complaint beyond the limitations imposed in Pennsylvania Rule of Civil Procedure 1033, it is none the less a superfluous legal conclusion and defendants' motion will be granted accordingly.

## ORDER

And now, February 8, 1991, upon consideration of defendants' preliminary objections in the nature of demurrer to count III of plaintiffs' complaint and motion to strike paragraph 29(n) of plaintiffs' complaint, it is hereby ordered, adjudged and decreed that said demurrer and motion to strike are granted.

---

2. Having resolved the issue of the existence of a legal duty, this court need not address the issue of proximate cause.