727 P.2d 819

**Pamela ORNELAS and Evelyn Dolores Ornelas, Plaintiffs-Appellants,**

v.

**Phillip E. FRY, Defendant-Appellee.**

**No. 1 CA–CIV 7940.**

Court of Appeals of Arizona,
Division 1, Department B.

May 6, 1986.

Reconsideration Denied June 25, 1986.

John E. Ellsworth, Flagstaff, Richard Anthony Johnson, Phoenix, for plaintiffs-appellants.

Weyl, Guyer, MacBan & Olson, P.A. by Barry A. MacBan, Mark A. Williams, Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Presiding Judge.

This appeal requires a determination of whether the mere allegation of a doctor's alcoholism, standing alone, creates a separate issue or claim of negligence in a malpractice action. This issue arises out of two consolidated medical malpractice actions filed by appellant Pamela Ornelas as the surviving spouse and personal representative of the estate of Robert Ornelas, and by appellant Evelyn Delores Ornelas, the sister of Robert Ornelas. The jury found in favor of the defendant-appellee, Dr. Phillip E. Fry; the appellants filed this appeal after the trial court denied their motion for a new trial based on alleged procedural, evidentiary and legal errors.

The issues on appeal are: (1) whether the trial court erred in ruling to exclude evidence of Dr. Fry's alleged alcoholism from the jury, absent a factual basis that the alcoholism affected Dr. Fry's ability to comply with the applicable standard of care;

(a) whether it was error for the trial court to deny appellants' motion to reconvene the medical liability review panel and to amend the complaint; and

(b) whether it was error for the trial court to deny appellants' motions to compel discovery of Dr. Fry's alcoholism treatment records from St. Luke's Hospital, and to conduct a psychological examination of Dr. Fry;

(2) whether the trial court erred in denying appellants' motions to continue the trial; and (3) whether the trial court erred in directing a verdict against appellant Evelyn Ornelas?

On April 18, 1977, Robert Ornelas underwent surgery to receive a new kidney donated by his sister, appellant Evelyn Ornelas. The appellee, Dr. Fry, was Mr. Ornelas's anesthesiologist for this operation.

During the surgery, after the new kidney had been surgically attached into Mr. Ornelas, he "bucked" or coughed on the operating table. According to the appellants, this "bucking" or coughing incident caused the sutures used to attach the donated kidney to rupture, which in turn precipitated a surgical crisis requiring emergency resuturing of the kidney. Appellants further alleged that the "bucking" or coughing was the result of Dr. Fry's improper or insufficient administration of anesthetic agents to Mr. Ornelas. The transplant operation ultimately proved unsuccessful and the donated kidney had to be surgically removed several days later.

Approximately a year and a half after the unsuccessful, sibling kidney transplant operation, Mr. Ornelas underwent another surgery to receive a kidney from a cadaver. Mr. Ornelas died on February 24, 1979,

about twelve weeks after the second kidney transplant operation.

Prior to Mr. Ornelas' death, he and his wife, Pamela, filed a medical malpractice suit against Dr. Fry. The complaint alleged that Dr. Fry and other medical personnel negligently cared for Mr. Ornelas during the sibling kidney transplant operation, and thereby proximately caused great physical and emotional injuries to the plaintiffs. All the defendants named in the complaint except Dr. Fry were voluntarily dismissed by the plaintiffs prior to trial. After Mr. Ornelas died in 1979, Pamela Ornelas substituted herself as plaintiff for her husband, and continued the ongoing action both as surviving spouse and as personal representative of the estate of Robert Ornelas.

Appellant Evelyn Ornelas also filed a medical malpractice action in superior court naming Dr. Fry as a defendant. The complaint in that action alleged that Dr. Fry's negligent care of Robert Ornelas proximately caused Evelyn Ornelas unnecessarily to suffer the loss of her donated kidney and to experience severe emotional trauma. The two malpractice actions were consolidated.

Pursuant to A.R.S. § 12–567, two medical liability review panels were convened to decide whether the evidence presented for each claim of alleged malpractice against Dr. Fry supported a judgment for the plaintiffs or the defendant. Both panels found unanimously in favor of Dr. Fry on all claims.

During pre-trial discovery, the Ornelases learned that Dr. Fry had been admitted to St. Luke's Hospital in Phoenix, Arizona in 1979 for treatment of alcoholism. They also were able to ascertain that in 1981 Dr. Fry had been arrested in Arizona for driving while intoxicated. Neither of these alleged incidents were presented to the medical liability review panels.

Armed with this new information, the appellants in 1982 filed a motion to compel discovery of Dr. Fry's alcoholism treatment records at St. Luke's Hospital. The motion was supported by an affidavit dated January 23, 1982, from Don Davis, a Ph.D. psychologist. In the affidavit, Dr. Davis alleged that at that time Dr. Fry met the standard criteria to be considered an "alcoholic," that it was possible Dr. Fry was impaired by the effects of alcoholism at the time of the Ornelas surgery, and that such impairment could explain the alleged poor standard of care given by Dr. Fry to Robert Ornelas. The record in this case does not reveal the trial court's disposition of this motion and therefore it is deemed to have been denied. The appellants, however, were able to depose Dr. Fry a second time and ask him questions about his drinking habits during the time germane to the sibling kidney transplant surgery.

In 1983, the appellants moved to amend the complaint and to reconvene the medical liability review panel in order to present a new claim of negligence or theory of recovery based on Dr. Fry's alleged alcoholism. The appellants also requested the court to order a psychological examination of Dr. Fry to allow them to investigate and establish a basis for the new "alcoholism-negligence" claim. This motion was supported by a letter from Peter Orlando, a Ph.D. psychologist, stating that since Dr. Fry had been previously diagnosed as suffering from situational depression, a psychological examination would be important in ascertaining the effect of Dr. Fry's depression on his performance during the Ornelas surgery. The letter also stated that drinking alcohol and depression go "hand in hand," and suggested that alcohol may have played a role in "the disastrous incident where Mr. Ornelas did not get sufficient treatment to permit a successful operation." The trial court denied all of these motions.

The trial was initially set for June 1, 1983. Prior to trial, the appellants were given an opportunity to present evidence to the trial judge that Dr. Fry's alleged alcoholism affected his performance on the day of the sibling transplant surgery. Immediately before commencing the trial, the trial judge ruled that evidence of alcohol intoxication at the time of the surgery was ad-

missible to show the mental state of Dr. Fry; however, no evidence of Dr. Fry's general "alcoholism" would be admitted without a factual predicate from a witness that Dr. Fry's abilities in the operating room at the time of the operation were in some way affected. The ruling went on to state that once the factual basis requirement was met, then and only then would expert testimony on Dr. Fry's general condition as an alcoholic be admissible.

Despite this pre-trial ruling, counsel for the appellants explained during opening statements to the jury at the June 1, 1983, trial that "on weekends [Dr. Fry] would average about a pint a day, 16 mixed drinks a day of alcohol." Immediately thereafter, counsel for Dr. Fry successfully moved for a mistrial. Accordingly, the trial judge ultimately scheduled a new trial for February 21, 1984. Shortly before the second trial, appellants filed two motions to continue the trial in order to accomodate one or more of their witnesses. The trial court denied both motions. Due to scheduling difficulties of the trial judge, the trial actually commenced on February 23, 1984.

In an attempt to satisfy the factual basis requirement on the alcoholism issue, appellants submitted two additional affidavits from their expert witnesses just prior to the second trial. One affidavit was dated February 20, 1984, and was signed by Robert Hustead, M.D. Dr. Hustead had previously testified for the plaintiffs at the medical liability review panel hearings and had signed an affidavit on March 20, 1980, detailing his expert opinion as to Dr. Fry's failure to meet the proper standard of care during the surgery on Robert Ornelas. The 1980 affidavit did not mention Dr. Fry's alleged alcoholism. In the 1984 affidavit, Dr. Hustead reaffirmed his prior affidavit, and, based on new information, opined that Dr. Fry was an active alcoholic who was "impaired" by the disease on the date of the sibling kidney transplant operation. Dr. Hustead concluded that such impairment had rendered Dr. Fry incompetent to practice anesthesiology on Robert Ornelas and that Dr. Fry therefore had had a duty to inform his patient of his incom-

petence and to relinquish the responsibility of administering the anesthesia. The second affidavit was dated February 21, 1984, and was signed by the same Don Davis, Ph.D., who had signed the affidavit in support of the appellants' motion to compel discovery of Dr. Fry's alcoholism treatment records. Dr. Davis's new affidavit stated that Dr. Fry was "impaired" by alcoholism during the 1977 surgery and that Dr. Fry was unable physically and mentally to engage in the safe practice of medicine.

During the second trial in February, 1984, appellants did not question Dr. Fry about the quantity of his alcohol consumption the day before or the day of the surgery. Nor did the appellants ask any witness whether Dr. Fry appeared impaired by alcohol during the surgery. In addition, the appellants did not offer to prove that one diagnosed as an alcoholic in 1979 would necessarily have been an alcoholic two years prior to that date. Thus, no evidence was offered at trial and none was excluded on the issue of alcoholism.

At the close of the appellants' evidence the appellee successfully moved for a directed verdict against the sibling kidney donor, Evelyn Ornelas. The remaining claims were ultimately submitted to the jury, which found in favor of Dr. Fry on all counts.

On appeal, the appellants argue it was error for the trial judge to rule that evidence of Dr. Fry's alleged alcoholism was inadmissible without a factual basis to show he was intoxicated or impaired by alcohol at the time of the surgery. They also argue that it was error for the trial court to deny their requests to amend the complaint and/or to reconvene the medical liability review panel. Both of these arguments are grounded on the theory that the allegation of Dr. Fry's alcoholism at the time of the surgery *per se* creates an independent issue or claim of negligence. Once this theory is accepted, appellants argue that the "alcoholism-negligence" claim must be presented both to a jury and to the medical liability review panel under A.R.S.

§ 12–567 and *Barnet v. Superior Court,* 124 Ariz. 467, 605 P.2d 445 (1979).

The last argument of appellants on the alcoholism issue is that the trial court erred in denying the motions to compel discovery of Dr. Fry's alcoholism treatment records from St. Luke's Hospital, and to conduct a psychological examination of Dr. Fry. Appellants challenge these rulings on grounds that they unfairly operated to prevent trial counsel from establishing the requisite factual basis of impairment during the surgery. Thus, even if the allegation that Dr. Fry was an alcoholic was insufficient to create a separate claim of negligence, appellants argue that the trial court should have exercised its discretion to allow them to comply with the factual basis requirement.

We first consider the argument that Dr. Fry's alleged alcoholism at the time of the surgery created an independent claim or issue of negligence for the jury. To support this argument, appellants cite *Grannis v. Bd. of Medical Examiners,* 19 Cal. App.3d 551, 96 Cal.Rptr. 863 (1971), for the proposition that alcoholism necessarily diminishes a physician's capacity to render the proper standard of care. Appellants also cite one of the statutes regulating the medical profession in Arizona wherein unprofessional conduct is defined to include habitual intemperance in the use of alcohol. A.R.S. § 32–1401(10)(f) (Supp.1985).

Although the opinion in *Grannis, supra,* discusses how an alcoholic doctor might present a danger to the public if allowed to continue to practice medicine, that case has no legal bearing on the fundamentally different issues presented in this case. *Grannis* arose out of judicial review of the California medical board's decision to revoke an alcoholic doctor's state license to practice medicine. The relevant question on appeal was whether there was substantial evidence in the record to support the conclusion that the doctor's use of alcohol presented a danger to the public and amounted to unprofessional conduct sufficient to justify revocation of the doctor's license. By contrast, the questions in this case concerning Dr. Fry's alleged alcoholism were raised in the context of a civil medical malpractice action where the basic issue was whether Dr. Fry exercised the proper standard of care in treating a particular patient at a particular time. In short, *Grannis* cannot be read to support appellants' argument that allegations of Dr. Fry's alcoholism created a separate issue of negligence for the jury.

■ Appellants' reliance on A.R.S. § 32–1401(10)(f) is similarly misplaced. That statute is part of the legislation which creates the Arizona Board of Medical Examiners and empowers it to regulate the practice of medicine and surgery in this state. While it is true that unprofessional conduct is defined to include habitual intemperance in the use of alcohol, any ramifications of such conduct as defined in A.R.S. § 32–1401(10)(f), such as revocation of a medical license, are matters to be resolved initially by the Board of Medical Examiners. Thus, even if Dr. Fry were acting unprofessionally under A.R.S. § 32–1401 by virtue of his use of alcohol, such a finding would have no legal bearing on whether, at the time of the Ornelas operation, his conduct fell below the applicable standard of care.

■ We hold as a matter of law that the fact that Dr. Fry may have been an alcoholic at the time of the surgery on Robert Ornelas does not create in and of itself a separate issue or claim of negligence. It is only when that alcoholism translates into conduct falling below the applicable standard of care that it has any relevance. Here, appellants were unable to furnish any evidence that at the time of the alleged malpractice, Dr. Fry's performance was in any manner impaired because of the use of alcohol. Thus, it was not error for the trial court to deny the pre-trial motions to amend the complaint and/or to reconvene the medical liability review panel.

Finally, we find no abuse of discretion in the trial court's ruling on the admissibility of evidence concerning Dr. Fry's alleged alcoholism. By requiring a factual basis that Dr. Fry was impaired by alcohol at the time of the surgery, the trial court careful-

ly tailored its ruling to ensure that the proffered evidence be both relevant and probative to the issues in the case, without creating unfair prejudice. Appellants were not denied the opportunity to present the evidence of alcoholism to the jury, but rather were only required to lay a reasonable foundation establishing its relevancy before it could be admitted. Imposing this requirement on the appellants was not an abuse of discretion.

■ We also find that the trial court did not abuse its discretion in denying appellants' motion to conduct a psychological examination of Dr. Fry. The motion was filed on May 6, 1983, just 18 days prior to trial which was then scheduled for May 24, 1983. Moreover, there is no indication that such an examination was relevant to any issue other than an attempt to establish Dr. Fry's alcoholism, an issue which was immaterial without further factual foundation. Under these circumstances, we find no abuse of discretion in the trial court's denial of appellants' request for a psychological examination.

■ Appellants also claim that it was error for the trial court to deny their motion to compel discovery of Dr. Fry's alcoholism treatment records at St. Luke's Hospital. We disagree. Under Rule 26(b)(1), Arizona Rules of Civil Procedure, parties may obtain discovery regarding any matter not privileged which is relevant to the subject matter of the pending action. In this case, Dr. Fry timely asserted the physician/patient privilege pursuant to A.R.S. § 12–2235 with respect to his alcoholism treatment records at St. Luke's Hospital. These records are privileged matter under A.R.S. § 12–2235 and thus are beyond the scope of discovery. Therefore, the trial court did not err in refusing to allow discovery.

The appellants next attach error to the trial court's denial of their motions to continue the trial. This request was based upon scheduling problems for one of their key expert witnesses, Dr. Ronald Katz from Los Angeles.

■ A motion for a continuance is addressed to the trial court's discretion and its ruling will not be disturbed on appeal unless there was an abuse of that discretion. *Evans v. Scottsdale Plumbing Co.,* 10 Ariz.App. 184, 457 P.2d 724 (1969). In this case, trial counsel for the appellants was responsible for the initial mistrial which in turn led to the rescheduling difficulties at issue on appeal. In addition, Dr. Katz was in fact able to testify. In sum, we find no abuse of discretion in the trial court's denial of the motion to continue.

■ The final argument concerns the trial court's granting of a directed verdict against the sibling kidney donor, Evelyn Ornelas. Appellants claim it was error to grant the directed verdict because earlier in the proceedings a trial judge sitting by assignment denied Dr. Fry's motion for summary judgment against Evelyn Ornelas on grounds that "the damage to the Plaintiff (loss of kidney for no useful purpose) ... was foreseeable." Appellants argue that this pre-trial ruling became the "law of the case" and therefore it was error to grant a directed verdict at trial. We disagree. In our opinion, a prior ruling denying a motion for summary judgment can never become "the law of the case" with respect to a subsequent motion for a directed verdict. In this case, Evelyn Ornelas presented no evidence at trial to establish that she was ever a patient of Dr. Fry. Furthermore, she failed to allege or prove the existence of a physician/patient relationship or any other legal theory which would give rise to any legal duty on the part of Dr. Fry. Therefore, it was proper for the trial court to direct a verdict against Evelyn Ornelas.

A like result was reached in *Moore v. Shah,* 90 App.Div.2d 389, 458 N.Y.S.2d 33 (1982), where the court was presented with a similar situation in that the plaintiff was also a kidney donor who claimed to have unnecessarily lost the donated kidney. There the loss was alleged to have been the result of a negligent diagnosis made by the physician of the kidney donee. The New York court held that, even though the loss

may have been foreseeable, the kidney donee did not have a cause of action against the donee's physician. The court reasoned that since the kidney donor was never a patient of the defendant doctor, no duty to the plaintiff existed in the first place.

■ Finally, in addition to the problem of no duty being owed to appellant Evelyn Ornelas, the loss of her kidney for no useful purpose is not a legally cognizable injury. Given that Evelyn Ornelas consented to the kidney transplant, her characterization of the injury as a loss of the kidney for no useful purpose is of no avail. The appellant agreed to donate (and thus to lose) the kidney no matter what the outcome of the transplant operation. Under these circumstances, absent an allegation that her consent was not informed, her claimed injury is not redressable as a matter of law.

In conclusion, we hold that the allegations concerning Dr. Fry's alcoholism did not state a separate claim or issue of negligence for the jury. We also uphold the trial court's evidentiary ruling requiring a specific and particularized factual predicate of alcohol-related impairment at the time of the surgery before evidence of Dr. Fry's general condition as an alcoholic would be admissible. In addition, the appellants failed to establish the requisite factual basis of impairment for admitting evidence of Dr. Fry's alcoholism. We further find no abuse of discretion in the trial court's denial of appellants' motions to reconvene the medical liability review panel, to amend the complaint, to compel discovery of Dr. Fry's alcoholism treatment records and to conduct a psychological examination of Dr. Fry. In addition, the trial court did not abuse its discretion in denying the motion to continue the trial. Finally, we hold that it was proper to direct a verdict against the appellant Evelyn Ornelas because she did not establish a relationship which would give rise to a duty on behalf of Dr. Fry.

Based on the foregoing, the judgment of the trial court is affirmed.

CORCORAN and CONTRERAS, JJ., concur.