MALIK v WILLIAM BEAUMONT HOSPITAL

Docket No. 93489. Submitted October 14, 1987, at Detroit. Decided April 19, 1988. Leave to appeal applied for.

Richard Malik as conservator of the estate of Lynne Malik, Richard and Loretta Malik, individually, Richard David Malik, individually, and Richard Malik as next friend of David Richard Malik, a minor, brought an action in the Oakland Circuit Court against William Beaumont Hospital, Olaf C. Kronemen, M.D., Nanda G. Salem, M.D., and others, seeking damages for injuries resulting from alleged medical malpractice. The facts indicate that Richard David Malik donated a kidney which was transplanted to his sister, Lynne, who thereafter suffered cardiorespiratory arrest, lapsed into a coma and received permanent brain damage. Richard Malik, the father of Lynne, filed suit against defendants as Lynne's conservator seeking damages on her behalf for the alleged malpractice. Richard and Loretta Malik, Lynne's parents, filed a suit for loss of consortium. Richard Malik as next friend of David, Lynne's sixteen-year-old brother, sued on David's behalf for loss of consortium (count III). Richard David Malik sued on his own behalf for the allegedly negligent treatment Lynne received because he claimed that he had needlessly sacrificed his kidney (count IV). In count V, plaintiffs alleged that defendants breached their contract with Lynne to provide proper postoperative care. Defendants moved for summary disposition on counts III, IV and V, alleging failure to state a cause of action. The trial court, Gene Schnelz, J., granted summary disposition to defendants as to counts III, IV and V. The trial court ruled: Michigan does not recognize a cause of action for loss of consortium when siblings

REFERENCES

Am Jur 2d, Estoppel and Waiver §§ 48, 49.

Am Jur 2d, Negligence §§ 32, 34, 37, 127-129.

Am Jur 2d, Physicians, Surgeons and Other Healers §§ 174 *et seq.*, 182, 183, 200 *et seq.*, 369.

Recovery for mental or emotional distress resulting from injury to, or death of, member of plaintiff's family arising from physician's or hospital's wrongful conduct. 77 ALR3d 447.

Tort liability of physician or hospital in connection with organ or tissue transplant procedures. 76 ALR3d 890.

are involved; defendants did not owe Richard David Malik a duty to treat Lynne nonnegligently; defendants did not owe Richard David Malik a duty as a result of their special relationship with Lynne because he consented to the loss of his kidney and that loss occurred prior to defendants' alleged malpractice and, therefore, defendants' malpractice was not the cause of his injuries; Richard David Malik's allegation in count IV was insufficient to state a cause of action for breach of contract and, regardless, the contract claim was barred by the statute of frauds; promissory estoppel did not save Richard David Malik's claim; Lynne's breach of contract claim did not comply with the statute of frauds. David Richard Malik appealed from the order granting summary disposition on his loss of consortium claim and Richard David Malik appealed from the order granting summary disposition on his malpractice and breach of contract claims.

The Court of Appeals *held:*

1. The trial court properly determined that there is no cause of action for loss of consortium where a minor plaintiff's brother or sister is negligently injured by another.

2. Plaintiffs' equal protection claim concerning a sibling's right to recover under the wrongful death act was not raised below and is not preserved for appeal.

3. The transplant involved two separate operations with separate physician-patient relationships arising from each. Richard David Malik failed to state a cause of action for injuries inflicted upon him resulting from the alleged malpractice committed upon Lynne. No physician-patient relationship arose between defendants and Richard David Malik as a result of surgery they performed on Lynne. There was no causal connection between the defendants' alleged malpractice and Richard David Malik's loss of a kidney.

4. The trial court did not err in denying Richard David Malik's breach of contract, promissory estoppel, and implied contract claims.

Affirmed.

1. Infants — Loss of Consortium — Siblings.

Michigan does not recognize a cause of action for loss of consortium where a minor plaintiff's brother or sister is negligently injured by another.

2. Negligence — Actions.

The elements of a cause of action for negligence are (1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damage.

3. NEGLIGENCE — DUTY.

Duty is a question of law; duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.

4. NEGLIGENCE — MALPRACTICE — MEDICAL MALPRACTICE.

The term "malpractice" denotes a breach of a duty owed by one rendering professional services to a person who has contracted for such services; in medical malpractice cases, the duty owed by the physician arises from the physician-patient relationship.

5. NEGLIGENCE — DUTY — THIRD PARTIES.

No one owes generally any duty to protect an individual who is endangered by a third person unless he has some special relationship with either the dangerous person or the potential victim.

6. CONTRACTS — FRAUDS, STATUTE OF.

Any agreement, promise, or contract relating to medical care and treatment, in order to be enforced, must be in writing and signed by the party to be charged, as must a warranty of cure (MCL 566.132[g]; MSA 26.922[g]).

7. CONTRACTS — IMPLIED CONTRACTS.

An implied contract exists where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated.

8. ESTOPPEL — PROMISSORY ESTOPPEL.

The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced forbearance or reliance of that nature, and (4) under such circumstances that the promise must be enforced if injustice is to be avoided.

*Zeff & Zeff & Materna* (by *Donald M. Fulkerson*), for plaintiffs.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Michelle A. Thomas*), for William Beaumont Hospital, Walter W. Tom, M.D., and Richard J. Eisenhut, M.D.

*Siemion, Huckabay, Bodary, Padilla & Morganti,*

*P.C. (by Raymond W. Morganti),* for Robert R.
Threlkeld, M.D., and Robert R. Threlkeld, M.D.,
P.C.

*Buesser, Buesser, Blank, Lynch, Fryhoff & Graham (by William O. Lynch),* for Olaf C. Kronemen,
M.D., Nanda G. Salem, M.D., Nanda G. Salem,
M.D., P.C., Isam Nadim Salah, M.D., Isam Nadim
Salah, M.D., P.C., Howard Shapiro, M.D., Howard
S. Shapiro, M.D., P.C., and Nephrology Associates
of Oakland County.

*Law Offices of Melvin R. Schwartz (by Karl E.
Hannum and Melvin R. Schwartz),* for George R.
Sewell, M.D., and Birmingham Urological Associates, P.C.

Before: J. H. GILLIS, P.J., and GRIBBS and J. C.
TIMMS,* JJ.

PER CURIAM. Richard Malik as next friend of
David Richard Malik (hereinafter David) appeals
as of right from the trial court's order granting
defendants' motion for summary disposition on his
loss of consortium claim concerning alleged medical malpractice injuries inflicted upon his sister,
Lynne Malik. Richard David Malik (hereinafter
Richard), Lynne's other brother, also appeals as of
right on the grounds that the trial court improperly granted defendants' motion for summary disposition concerning his malpractice and breach of
contract claims arising out of the same incident.
We affirm.

At age nine, Lynne developed diabetes. Her
condition deteriorated and she developed diabetic
ketoacidosis. In 1984, at age twenty-seven, Lynne
was losing her eyesight and receiving dialysis

---

* Circuit judge, sitting on the Court of Appeals by assignment.

treatments at William Beaumont Hospital. Defendants determined that Lynne needed a kidney transplant. Richard, Lynne's twenty-six-year-old brother, was determined to be a suitable donor and he agreed to donate a kidney. Richard was married at the time of the operation and had three children. Richard underwent physical as well as mental evaluations. During this process, Richard and Lynne were informed of "possible post-transplantation complications and the precautions necessary to prevent them from occurring" as well as "the actions to be taken should complication occur." They were also informed that Lynne's body might reject the transplant; however, they were told that there was a ninety percent success rate because Richard was a living-related donor.

On October 15, 1984, the surgery was performed. Subsequently, plaintiffs allege that defendants' failure to monitor and treat Lynne properly after the operation caused her to suffer cardiorespiratory arrest and, eventually, to lapse into a coma. It was later determined that Lynne suffered permanent brain damage, rendering her totally incapacitated. Richard fully recovered from his operation.

On September 4, 1985, plaintiff Richard Malik, the father of Lynne, Richard and David, filed suit against defendants as Lynne's conservator seeking damages on her behalf for the alleged malpractice. Individually, Richard and Loretta Malik, Lynne's parents, filed a suit for loss of consortium. Richard Malik, as next friend of David, Lynne's sixteen-year-old brother, sued on his behalf for loss of consortium in count III of plaintiffs' complaint. In count IV, Richard sued on his own behalf for the allegedly negligent medical treatment Lynne received because he claimed that he had needlessly sacrificed his kidney. Finally, in count V, plaintiffs

alleged that defendants breached their contract with Lynne to provide proper postoperative care.

Defendants moved for partial summary disposition on counts III, IV and V, arguing that plaintiffs had failed to state a claim upon which relief could be granted. MCR 2.116(C)(8). In their brief in opposition to defendants' motion for summary disposition, plaintiffs claimed that defendants breached their contract with Richard by rendering allegedly improper care to Lynne and that, in any event, the doctrine of promissory estoppel should be applied in this case.

The trial court granted defendants' motion for summary disposition as to count III because Michigan does not recognize a cause of action for loss of consortium when siblings are involved. The trial court also granted defendants' motion for summary disposition as to count IV, finding that, although Richard was defendants' patient and defendants owed him a duty to treat him nonnegligently, they did not owe him a duty to treat Lynne nonnegligently. The trial court also rejected Richard's claim that defendants owed him a duty as a result of their special relationship with Lynne because Richard consented to the loss of his kidney and that loss occurred prior to defendants' alleged malpractice and, therefore, defendants' malpractice was not the cause of Richard's injuries. The trial court further held that Richard's mere allegation of an agreement in count IV was insufficient to state a cause of action for breach of contract. However, realizing that Richard could move to amend his complaint, the trial court addressed the contract claim and ruled that it was barred by the statute of frauds, MCL 566.132(g); MSA 26.922(g), because a specific written agreement was not entered into. The trial court further ruled that promissory estoppel did not save Richard's claim be-

cause defendants did not promise to cure Lynne and, even if they did, it was unreasonable for Richard to rely on such a promise. Finally, the trial court dismissed Lynne's breach of contract claim because it did not comply with the statute of frauds, MCL 566.132(g); MSA 26.922(g).

A motion brought under MCR 2.116(C)(8), for failure to state a claim upon which relief may be granted, is to be decided upon the pleadings alone. *Beaudin v Michigan Bell Telephone Co,* 157 Mich App 185, 187; 403 NW2d 76 (1986). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Id.* Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery, the motion should be denied. *Id.*

Richard Malik as next friend asks us to recognize a cause of action for loss of consortium where a minor sibling's brother or sister is negligently injured by another, relying on *Berger v Weber,* 411 Mich 1; 303 NW2d 424 (1981), reh den 411 Mich 1155 (1981), *Sizemore v Smock,* 155 Mich App 745; 400 NW2d 706 (1986), lv gtd 428 Mich 873 (1987),* and *Crystal v Hubbard,* 414 Mich 297; 324 NW2d 869 (1982). In *Berger, supra,* our Supreme Court held, by a four to three vote, that a minor child could recover for loss of consortium when his or her parent was negligently injured by another. In *Sizemore, supra,* a panel of this Court analogized to and expanded the reasoning in *Berger, supra,* to hold that a parent may recover for loss of consortium when his or her minor child is negligently injured by another. In *Crystal, supra,* our Supreme Court held that the siblings of a deceased person may recover damages for loss of society and companionship under the wrongful

---

* [*Sizemore* was subsequently reversed by the Supreme Court, 430 Mich 283; 422 NW2d 666 (1988)—Reporter.]

death act. The Court's decision was based on its interpretation of the phrase "next of kin." The Court ruled that the Legislature, by providing for damages for loss of society and companionship under the wrongful death act, intended to provide compensation for the destruction of relationships assumed to exist among members of the deceased's family who are heirs under the intestate laws of this state. *Id.* Both *Berger, supra,* p 15, and *Sizemore, supra,* p 748, noted that it would be anomalous to allow recovery under the wrongful death act for loss of consortium in the parent-child relationship, but not for negligently-inflicted injuries.

The same argument is raised here. We agree with Justice LEVIN's reasoning in *Berger, supra,* pp 47-48 (LEVIN, J., dissenting), that such a result is not anomalous for the following reasons: (1) at common law, the death of a human being could not be complained of as an injury and, therefore, the various state legislatures created wrongful death acts to provide for remedies in these cases, (2) by allowing for recovery under the wrongful death act for loss of consortium damages, the Legislature ensured recovery without regard to the decedent's status as a wage earner because society believes that a tortfeasor, who negligently kills someone, should not escape liability, no matter how unproductive his victim, (3) where the victim is only injured rather than killed, the victim may bring suit on his or her own behalf and, therefore, there is no need to permit other family members to bring suit in order to prevent the tortfeasor from escaping liability, and (4) where the injured party survives, certain losses of the party seeking consortium can be compensated for in the victim's own action.

In any event, we would note that the wrongful death statute's provision was only a small portion

of our Supreme Court's reasoning in *Berger, supra,* and this Court's reasoning in *Sizemore, supra.* In fact, both opinions were based on the unique relationship between minor children and their parents. We agree with defendants that sibling relationships are not like parent-child relationships which include extensive financial, legal and emotional obligations.

Furthermore, we agree with Justice LEVIN that reasonable limits must be placed on liability for the consequences of negligent acts. *Berger, supra,* p 33 (LEVIN, J., dissenting). No social benefit to be gained from recognizing this new cause of action has been articulated. By contrast, the creation of a new cause of action for an indirect injury to an intangible relational interest will impose a significant additional economic burden on tortfeasors. As defendants point out, a person may have many siblings. There is also the potential for claims from half-siblings and step-siblings. That economic burden will ultimately be borne by the general public and weighs against creation of this new cause of action. *Id.* Consequently, we affirm the trial court's order granting defendants' motion for summary disposition on count III of plaintiffs' complaint. *Beaudin, supra,* p 187.

We note that plaintiffs' equal protection claim concerning a sibling's right to recover under the wrongful death act was not raised below and, therefore, is not preserved for appeal. See *Petterman v Haverhill Farms, Inc,* 125 Mich App 30, 33-34; 335 NW2d 710 (1983). Even if we treated plaintiffs' claim as preserved, we would reject it for the reasons outlined in Justice LEVIN's dissenting opinion in *Berger, supra,* pp 44-48.

We now turn to Richard's claim that he should be compensated for the malpractice committed on his sister because it was foreseeable that he would

be emotionally injured by her failure to recover as well as suffer the needless loss of his kidney. Plaintiffs claim that count IV was dismissed because Richard was not defendants' patient. As noted above, the trial court ruled that while Richard was defendants' (specifically George Sewell's) patient, defendants only owed him a duty to treat him nonnegligently; they did not owe him a duty to treat Lynne nonnegligently.

The elements of an action for negligence are (1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damage. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977), supplemental order on reh 402 Mich 958 (1978). Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. *Id.,* p 439. Duty is a question of law. The term "malpractice" denotes a breach of the duty owed by one rendering professional services to a person who has contracted for such services; in medical malpractice cases, the duty owed by the physician arises from the physician-patient relationship. *Rogers v Horvath,* 65 Mich App 644, 646-647; 237 NW2d 595 (1975), lv den 396 Mich 845 (1976). Here, a physician-patient relationship existed between Dr. Sewell and Richard as to the nephrectomy Dr. Sewell performed on him. Moreover, a physician-patient relationship existed between the physicians who performed surgery on Lynne and Lynne herself. Contrary to Richard's claim, we view the transplant as two separate operations with separate physician-patient relationships arising from each. Because Richard seeks to recover for the injuries inflicted upon him which resulted from the alleged mal-

practice committed upon Lynne, he has failed to state a cause of action. No physician-patient relationship arose between defendants and Richard as a result of surgery they performed on Lynne. *Rogers, supra.* See, e.g., *Ornelas v Fry,* 151 Ariz 324, 329-330; 727 P2d 819 (1986).

Even if we accepted Richard's argument that defendants owed him a duty, we would hold that he voluntarily agreed to give up his kidney no matter what the outcome of the transplant operation. Therefore, defendants' conduct did not proximately cause Richard to lose his kidney. *McLean v Rogers,* 100 Mich App 734, 737; 300 NW2d 389 (1980). See, e.g., *Ornelas, supra,* p 330. Moreover, we believe that Richard's remaining emotional damages should be treated as a claim that his relationship with Lynne merits compensation. This claim then becomes like a loss of consortium claim (i.e., the plaintiff claims derivative damages resulting from his relationship with the primary injured party). Again, the issue becomes whether this Court should impose liability in this situation. We decline to do so. See *Berger, supra,* pp 33-34 (LEVIN, J., dissenting).

Richard also relies on *Welke v Kuzilla,* 144 Mich App 245; 375 NW2d 403 (1985), and *Davis v Lhim,* 124 Mich App 291; 335 NW2d 481 (1983), remanded for reconsideration 422 Mich 875 (1985), *Davis v Lhim (On Remand),* 147 Mich App 8; 382 NW2d 195 (1985), lv gtd 425 Mich 851 (1986), to support his claim. As a general rule, no one owes any duty to protect an individual who is endangered by a third person unless he has some special relationship with either the dangerous person or the potential victim. *Welke, supra,* p 250; *Davis v Lhim, supra,* p 299. In *Davis, supra,* this Court held that a psychiatrist has a special relationship with his patient and, therefore, the psychiatrist

owes a duty to use reasonable care to protect readily identifiable persons foreseeably endangered by the patient. In *Welke, supra,* this Court held that a doctor owed a duty to a person injured as a result of the doctor's patient's acts because of the allegedly improper treatment of the patient.

As we have noted, a special relationship in this case existed between defendants and Lynne. However, Lynne was not a dangerous person who caused Richard's injuries, as in *Davis, supra.* Moreover, as noted by the trial court, Richard voluntarily assumed the harm (i.e., loss of the kidney) and his loss came *before* the alleged malpractice committed on Lynne, not after it. See, e.g., *Ornelas, supra,* p 330. Therefore, there was no causal connection between the defendants' alleged malpractice and Richard's loss of a kidney. *Welke, supra.*

Richard also claims that the trial court erred when it dismissed his breach of contract and promissory estoppel claims. Richard claims that defendants expressly agreed that, absent rejection or unavoidable complications (not including negligent postoperative care), the transplant would improve his sister's life. MCL 566.132(g); MSA 26.922(g) provides:

> In the following cases an agreement, contract or promise shall be void, unless that agreement, contract, or promise, or a note or memorandum thereof is in writing and signed by the party to be charged therewith, or by a person authorized by him:
>
> * * *
>
> (g) An agreement, promise, contract, or warranty of cure relating to medical care or treatment. Nothing in this paragraph shall affect the right to sue for malpractice or negligence.

In support of his contract claim, Richard points to

his preoperative physical and mental examinations as well as the hospital staff's memorandum concerning posttransplant complications and the ninety-percent chance of success following a living-related donor transplant. Richard contends that this promise was not a guarantee of cure or, even if it was, the documents upon which he relies were sufficient to satisfy the statute of frauds. Thus, Richard reads MCL 566.132(g); MSA 26.922(g) so that the phrase "of cure" modifies the words "agreement, promise, contract, or warranty." Defendants contend that any agreement or promise relating to medical care and treatment must be in writing and that Richard's documents did not establish such an agreement; therefore, defendants read MCL 566.132(g); MSA 26.922(g) disjunctively (i.e., an agreement, promise, or contract relating to medical care and treatment must be in writing and signed by the party to be charged as must a warranty of cure). We agree with defendants' interpretation. *Stein v Southeastern Michigan Family Planning Project, Inc,* 158 Mich App 702; 405 NW2d 147 (1987), lv gtd 429 Mich 861 (1987); *Gilmore v O'Sullivan,* 106 Mich App 35; 307 NW2d 695 (1981), lv den 413 Mich 851 (1982).

We now turn to the issue of whether the documents presented by Richard were sufficient to establish such a promise. Richard was informed that the statistical success rate of this type of operation was ninety percent because he was a living-related donor. Richard also told Lori Glick, a social worker who interviewed him prior to the operation, that "[h]is main motivation for donating the kidney was to improve his sister's life." We agree with the trial court that these memoranda concerning a meeting Richard had attended prior to the operation and a psychological evaluation were insufficient to establish that defendants had

promised to improve the quality of Lynne's life. As in *Gilmore, supra,* the memos were insufficient to demonstrate that defendants agreed that Lynne would be healthy absent rejection *and* other unavoidable complications (not including allegedly negligent postoperative care).

Richard also contends that defendants impliedly agreed to perform Lynne's operation with due care. An implied contract exists where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated. *Rocco v Dep't of Mental Health,* 114 Mich App 792, 799; 319 NW2d 674 (1982), aff'd 420 Mich 567 (1984). To the extent an implied contract to use due care existed, we again believe that one implied contract would exist between Lynne and her doctors, while a separate implied contract would exist between Richard and his doctors. As noted above, no negligence occurred during Richard's operation and, therefore, his implied contract theory is without merit.

Finally, we address Richard's promissory estoppel claim. The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced forbearance or reliance of that nature, and (4) under such circumstances that the promise must be enforced if injustice is to be avoided. *Clark v Coats & Suits Unlimited,* 135 Mich App 87, 98; 352 NW2d 349 (1984). We agree with the trial court that, at most, defendants promised *to attempt* to improve Lynne's life through the kidney transplant. Such a promise was not a guarantee of cure. Moreover, even if it was, it was unreasonable for Richard to rely on the promise given that it is common knowledge

that the results of medical treatment cannot be guaranteed and, in any event, such a promise must be in writing, MCL 566.132(g); MSA 26.922(g).

Affirmed.