Lemire, James R., J.
This action arises from a kidney transplant procedure, recommended and performed by the defendants, Phillip Ayvazian, M.D. (“Dr. Ayvaz-ian”) and Jeffrey Stoff, M.D. (“Dr. Stoff j. Alleging that the transplant was unnecessary, Anne Montalto (“Montalto”), the transplant recipient, and Joseph Francis (“Francis”), the volunteer donor, brought medical malpractice claims against Drs. Ayvazian and Stoff. The matter is before the court on Dr. Ayvazian’s motion for summary judgment on Francis’ claims. In support of his motion, Dr. Ayvazian argues that he was not personally involved in Francis’ care, that no physician-patient relationship existed between them, and thus, that no duty was owed to Francis. In opposition, Francis argues that there are disputed issues of material fact surrounding his relationship with Dr. Ayvaz-ian. Alternatively, Francis argues that a physician-patient relationship is not a necessary element to his claims against Dr. Ayvazian. For the reasons below, Dr. Ayvazian’s motion is DENIED.

BACKGROUND

In 1990, Montalto underwent a cadaveric kidney transplant. Around 1999, the cadaveric kidney began to show signs of failure. The plaintiffs claim that this failure was due to cyclosporine nephrotoxicity. That is, the anti-rejection medication Montalto was taking was poisoning her kidney. Montalto was eventually taken off cyclosporine and put on another anti-rejection drug, and her kidney function allegedly began to improve. However, the plaintiffs contend that the defendants failed to recognize this improvement, and negligently advised Montalto that she needed another kidney transplant.
Based on the defendants’ advice, Francis voluntarily donated one of his kidneys to Montalto. The transplant occurred on July 23, 2001. One team of doctors, not party to this suit, performed Francis’ extraction surgery, which was completed without complication. Another team of doctors, namely Drs. Ayvazian and Stoff, took the extracted kidney and transplanted it into Montalto. The transplant was ultimately unsuccessful and the new kidney was removed on August 14, 2001. Despite removal of the new kidney, the function of Montalto’s cadaveric kidney continued to improve, and she survived on that kidney alone. The core of the plaintiffs’ claims is that the defendants’ negligence caused them both to undergo unnecessary and dangerous surgeries.
There is no dispute that Dr. Ayvazian had a physician-patient relationship with Montalto. However, the parties dispute the extent of Dr. Ayvazian’s relationship with Francis. Dr. Ayvazian points to Francis’ deposition, which indicates that he did not consider Dr. Ayvazian to be his personal doctor. In addition, Dr. Ayvazian claims that he provided no care to Francis in connection with his kidney donation. Francis, however, points to additional evidence in the record, discussed below, which he contends establishes a doctor-patient relationship between himself and Dr. Ayvazian.
On June 19, 2001, Didier Mandelbrot, M.D. evaluated Francis as a potential donor. Based on his examination, Dr. Mandelbrot reached the conclusion that Francis was “an excellent candidate for renal donation.” However, Dr. Mandelbrot’s report noted that Francis had an issue with “urinary frequency and urgency,” and it indicated that he should discuss the issue with Dr. Dahl. Dr. Mandelbrot also indicated that Francis should “get a repeat chest x-ray to evaluate whether [a] previous finding on chest x-ray was patho-logic or simply a shadow from his nipple.”
The record reflects that, on July 6, 2001, Drs. Dahl and Ayvazian both evaluated Francis. Dr. Dahl’s report incorporates Dr. Mandelbrot’s earlier evaluation. Dr. Dahl further noted that he and Francis “discussed in detail plans for laparoscopic donor nephrectomy” and “possible significant risks including bowel injury, major vascular injury and other unforeseen complications.” Dr. Dahl’s report does not mention any discussion of Francis’ urinary frequency and urgency complaints, nor does if mention any repeat chest x-ray. Dr. Ayvazian’s report from Francis’ July 6, 2001 visit indicates that Francis was “interested in donating a kidney to a friend’s daughter.” The report goes on to discuss Francis’ urinary frequency and urgency issue. The report concluded with Dr. Ayvazian’s advice that *218 Francis keep a voiding diary for the next two weeks and then return it to the Urology Clinic.
In addition to the office visits discussed above, the record contains an Admitting Summaiy, Report of Operation and Discharge Summary for Francis, and some laboratory records. The first three documents list Dr. Dahl as Francis’ attending physician. In contrast, the laboratory records list Dr. Ayvazian as Francis’ attending physician. The laboratory records include a Chest PA and LAT, a CT RENAL DONOR, and a repeat Chest PA and LAT. On the repeat Chest PA and LAT, Dr. Ayvazian is listed as both the attending physician and the requester. That repeat Chest PA and LAT record indicates that the “ [previously seen nodule at the left base represents nipple shadow.”

DISCUSSION

Summary judgment is appropriate when the sum-maryjudgment record shows that “there is no genuine issue as to all material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The non-moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. FLesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’. . . that there is an absence of evidence to support the non-moving party’s case”). In reviewing a motion for sum-maryjudgment, the court reviews the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Tech., Inc. v. Liberty Mut Ins. Co., 429 Mass. 196, 197 (1999). If the moving part has earned its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summaiy judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 554 (1976); see Ng Bros., 436 Mass. at 644 (statingthat, even where the facts are disputed, “summaryjudgment is still available if the party with the burden of proof at trial. . . fails to present in the summaryjudgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
To prove medical malpractice, a plaintiff must establish that “(1) a doctor-patient relationship existed; (2) the doctor did not conform to accepted medical standards in performing his duties with regard to the patient; and (3) damage resulted from this failure to conform.” Perez v. Bay State Ambulance & Hosp. Rental Serv., Inc., 413 Mass. 670, 676 (1992), citing Kapp v. Ballantine, 380 Mass. 186, 193 (1980). “The essence of the doctor-patient relationship is the undertaking by a physician to diagnose and/or treat the person being diagnosed or treated with reasonable professional skill.” Lambley v. Kameny, 43 Mass.App.Ct. 277, 283 (1997).
In this case, Dr. Ayvazian asserts that he never examined Francis in connection with his planned kidney donation. Instead, Dr. Ayvazian contends that his July 6, 2001 consultation with Francis was for an unrelated matter. The court disagrees. The evidence in the record could support a finding that Dr. Ayvazian evaluated Francis in the Urology Clinic because Dr. Mandelbrot wanted to ensure that Francis’ urinaiy issues would not complicate his ability to donate. Moreover. Dr. Ayvazian’s report expressly acknowledges Francis’ intention to donate one of his kidneys. Finally, the laboratory records, which list Dr. Ayvazian as Francis’ attending physician, indicate that Dr. Ayvazian requested the second chest x-ray for Francis. With this evidence, a fact-finder could conclude that Dr. Ayvazian was involved with Francis’ pre-operative care and evaluation as a donor. In sum, material factual issues remain to be resolved on the issue of a physician-patient relationship between Dr. Ayvazian and Francis.
However, even assuming Ayvazian’s involvement with Francis’ care gives rise to a doctor-patient relationship, the alleged malpractice did not arise from Ayvazian’s, or any other doctor’s, evaluation or treatment of Francis. There is no allegation in this case that Francis was not a medically appropriate donor, or that there was negligence in the actual performance of his extraction surgery. All of the alleged negligence in this case stems from the defendants’ medical advice that Montalto needed another kidney transplant. Thus, the issue is whether the scope of Ayvazian’s duty of care to Francis includes his allegedly negligent advice to Montalto that she required a kidney transplant.
Massachusetts’ courts have not considered the scope of a doctor’s duty to an organ donor. However, the courts of other states have done so. In Malik v. Beaumont Hospital, 168 Mich.App. 159, 163 (Mich.Ct.App. 1988), an organ donor sought recovery *219 for his loss of a kidney where the defendants’ post-transplant negligence caused the transplant recipient to suffer irreversible brain damage. The Michigan Court of Appeals found that there was one physician-patient relationship between the plaintiff and the surgeon who removed his kidney, and another physician-patient relationship between the transplant recipient and her surgeons, who were the defendants in the case. Id. at 168. The court concluded that “[n]o physician-patient relationship arose between defendants and [the plaintiff] as result of the surgery they performed on [the transplant recipient],” and that the plaintiff “voluntarily agreed to give up his kidney no matter what the outcome of the transplant operation. Therefore, defendants’ conduct did not proximately cause [the plaintiff] to lose his kidney.” Id. at 169.
Similarly in Ornelas v. Fry, the Court of Appeals of Arizona held that a transplant recipient’s anesthesiologist owed no duly to the organ donor for his negligence during the implantation of the donor’s kidney into the donee. 151 Ariz. 324, 325, 329-30 (Ariz.Ct.App. 1986). As a basis for allowing a directed verdict against the donor, the court found that the donor “presented no evidence at trial to establish that she was ever a patient of [the defendant].” Id. at 379. The court further noted that “[t]he appellant agreed to donate (and thus to lose) the kidney no matter what the outcome of the transplant operation. Under these circumstances, absent an allegation that her consent was not informed, her claimed injury is not redress-able as a matter of law.” Id. at 330.
The case at hand is distinguishable from both Malik and Ornelas for two reasons. First, there is sufficient evidence, at this juncture, to support a finding that a physician-patient relationship existed between Dr. Ayvazian and Francis. This is not a case where Dr. Ayvazian had no contact with Francis. Indeed, Dr. Ayvaz-ian personally examined Francis prior to his donation, and his advice regarding Montalto’s condition induced Francis to donate his kidney in the first place. Second, unlike Malik and Ornelas, this case involves a claim of failure to obtain informed consent. Francis alleges that, had Dr. Ayvazian properly evaluated and informed the plaintiffs of Montalto’s condition, Francis would not have consented to the treatment, namely, a kidney transplant. The issue of informed consent did not arise in either the Malik or Ornelas decisions because there was no dispute that the plaintiffs in those cases understood the risks of transplant failure and donated their kidneys nonetheless. In contrast, there is genuine issue of material fact as to whether Francis was properly informed of the risk that Montalto did not need a kidney transplant in the first place.
In other cases, state courts have held that an organ donor does not have a cause of action against doctors whose negligence created the need for an organ donation. See Dabdoub v. Ochsner Clinic, 99-939. p. 4-5 (La.App. 5 Cir. 1/25/00); 802 So.2d 651, 654-55 (holding that where plaintiff was never a patient of the defendant, no duty was owed); Moore v. Shaw, 458 N.Y.S.2d 33; 90 A.D.2d 389, 389 (N.Y.App.Div. 1982) (rejecting application of rescue doctrine where plaintiff was never defendant’s patient); and Petersen v. Farberman, 736 S.W.2d 441, 442-43 (Mo.App. 1987) (rejecting application of the rescue doctrine). In each of these cases, the defendants’ alleged negligence occurred prior to the determination that a transplant was required, and thus, the courts found it unjust to extend a physician’s duty to an unknown future organ donor. In contrast, Francis’s claim arose as a result of the determination that a transplant, and therefore an organ donor, was necessary. Both Montalto and Francis relied on Dr. Ayvazian’s advice that Montalto needed a kidney transplant, and the record reflects that Dr. Ayvazian was well aware of Francis’ status as an intended organ donor when he made the final decision to go ahead with the transplant.
Finally, Francis points to another state case, Siebe v. Univ. of Cincinnati, 117 Ohio Misc.2d 46, 58 (2001), where the Ohio Court of Claims found that an organ donor had a cause of action against a hospital for negligence during the implantation of the donor’s kidney into the transplant recipient. Specifically, the negligence in that case occurred during the placement of a central venous line into the transplant recipient during the implantation surgeiy, which ultimately caused the transplant recipient’s death. Id. at 49-52. Notably, however, the Siebe case did not involve claims against an individual doctor, and the physician-patient relationship element was never discussed in the opinion. In finding the hospital liable, the court held that the donor plaintiff, who was “in the unique position of being involved in [a transplant]] surgery as an organ donor, has lost the use of his left kidney as a proximate result of defendant’s negligence in its treatment of [the transplant recipient]. Therefore, [he] is entitled to damages on his personal injury claim.”
It is not clear that Massachusetts’ appellate courts would permit an organ donor to recover for personal injuries based solely on negligence committed after a successful kidney extraction procedure, as was the case in Siebe. However, it is more likely that the courts of this Commonwealth would find that, where a physician improperly advises a patient that she needs a kidney transplant, and a donor known to the physician relies on that advice and needlessly donates a kidney, there is a sufficient physician-patient relationship, based on which that donor is entitled to recover for medical malpractice.

ORDER

For the above-stated reasons, Dr. Ayvazian’s Motion for Summary Judgment on Francis’s claims is DENIED.